ACCEPTED
01-13-01062-CV
FIRST COURT OF APPEALS
HOUSTON, TEXAS
12/29/2014 11:57:10 PM
CHRISTOPHER PRINE
CLERK

NO. 01-13-01062-CV
IN THE COURT OF APPEALS
FIRST JUDICIAL DISTRICT OF TEXAS
HOUSTON DIVISION

FILED IN
1st COURT OF APPEALS
HOUSTON, TEXAS
12/29/2014 11:57:10 PM
CHRISTOPHER A. PRINE
Clerk

## BRENDA HERBERT, HENRY BOLTON ESTATE AND RUBY BOLTON,

Appellant

v.

## LAURA URBINA,

Appellee.

On Appeal from the 80th District Court of
Harris County, Texas

## MOTION FOR REHEARING

TONI L. SHARRETTS
State Bar No. 24037476
11054 North Hidden Oaks
Conroe, Texas 77384
(281) 827-7749 - Telephone
iceattorney@aol.com
ATTORNEY FOR APPELLANT

## LIST OF NAMES OF PARTIES IN INTEREST

The undersigned counsel of record certifies that the following listed persons have an interest in the outcome of this case.  These representatives are disclosed in order that the Judges of this Court may evaluate possible disqualification or recusal:

DEFENDANT -  APPELLANT:
Brenda Herbert, Henry Bolton Estate and Ruby Bolton
c/o Toni L. Sharretts, Esq.
6760 Portwest
Houston, Texas 77024
(832) 744-1491 - Telephone
(713) 759-0234 - Facsimile

ATTORNEY OF RECORD FOR APPELLANT:
Toni L. Sharretts
State Bar No. 24037476
6760 Portwest
Houston, Texas 77024
(832) 744-1491 - Telephone
(713) 759-0234 - Facsimile

PLAINTIFF - APPELLEE:
Laura Urbina c/o Juan Gonzalez, Esq.
State Bar No. 24002158
8918 Tesoro Drive
San Antonio, Texas  78217
(210) 587-4000 - Telephone
(210) 587-4001  – Facsimile

ATTORNEY OF RECORD FOR APPELLEE:
Juan Gonzalez
State Bar No.  24002158
8918 Tesoro Drive
San Antonio, Texas  78217
(210) 587-4000 - Telephone
(210) 587-4001 – Facsimile

# TABLE OF CONTENTS

LIST OF NAMES OF PARTIES IN INTEREST ...................................................ii

LIST OF AUTHORITIES ................................................................................v

ABBREVIATIONS ........................................................................................vi

STATEMENT OF THE CASE .........................................................................1

ISSUES PRESENTED ....................................................................................2

STANDARD OF REVIEW                                                                     3

STATEMENT OF FACTS ...............................................................................5

SUMMARY OF THE ARGUMENT ................................................................7

ARGUMENT AND AUTHORITIES .............................................................9

      I.     WHETHER THE APPELLATE COURT ERRED IN FINDING LEGAL SUFFICIENCY WHEN AS A MATTER OF LAW THE APPELLEE CERTIFIED IN WRITING AND RECEIVED PAYMENT FOR ONLY THE EXACT HOURS SHE ACCERTED UNDER PENALTY OF LAW SHE WORKED AND NO MORE. .................................. 9

          A.     An Unambiguous Contract Existed between the Parties wherein Laura Urbina Stipulated her Wage was $10/Hour, She Certified in Writing under Penalty of Criminal Prosecution the Exact Hours She Worked, and She Accepted Payment for Specific Hours She Certified She Worked. The Jury's Decision is improper as a Matter of Law. ........9

          B.     A Question of Fact Should Not Have Been Submitted to the Jury When the Issue was a Matter of Law .......................................................13

II.      WHETHER THE APPELLATE COURT ERRED IN FINDING FACTUAL INSUFFICIENCY BASED ON THE ABSENCE OF A POST-TRIAL MOTION ASSERTING SAME WHEN A POST-TRIAL MOTION ASSERTING FACTUAL INSUFFICIENCY WAS IN DEED FILED …………………………………….13

CONCLUSION………………………………………………… 14

CERTIFICATE OF COMPLIANCE……………………………………..15

CERTIFICATE OF SERVICE……………………………………………15

APPENDIX ...................................................................16

# LIST OF AUTHORITIES

## CASES

**Case Name**                                                                    **Page(s)**

*Angelou v. African Overseas Union,*
      33 S.W.3d 269 (Tex.App.--Houston [14th Dist.] 2000, no pet.)     1, 11

*Cecil v. Smith,*
      804 S.W.2d 509 (Tex. 1991)                           17

*City of Keller v. Wilson,*
      168 S.W.3d 802 (Tex. 2005) (*reversed)*               11, 12

*Coker v. Coker,*
      650 S.W.2d 391 (Tex. 1983)                1, 9, 12, 14

*Fort Bend Cty. Drainage Dist. v. Sbrusch,*
      818 S.W.2d 392 (Tex. 1991)                   10, 11

*Frost Nat'l Bank v. L&F Distribs., Ltd.,*
      165 S.W.3d 310 (Tex. 2005) (per curiam)       1, 12, 13, 14

*Heritage Resource, Inc. v. NationsBank,*
      939 S.W.2d 118, 121 (Tex. 1996)………………………   …….   13

*J.M. Davidson, Inc. v. Webster,*
      128 S.W.3d 223 (Tex. 2003)                 1,12, 14

*John Masek Corp. v. Davis,*
    848 S.W.2d 170 (Tex.App.--Houston) [1st Dist.] 1992, writ denied)
                                                5, 10, 11, 12

*Michelin North America, Inc. v. First Industrial NLF 12 JV, LLC,*
      2014 Tex.App. LEXIS 1681 (Tex.App.--Houston [1st Dist.] Feb. 13 2014)
      .......................................................................................... 13

*Solis v. Evins,*
    951 S.W2d 44 (Tex.App.--Corpus Christi 1997, no writ)........................9, 11

*Spencer v. Eagle Star Ins. Co. of Am.,*
    876 S.W.2d 154 (Tex. 1994).                                              13

## ABBREVIATIONS

The following abbreviations have been used for the Appellate Court's convenience throughout Appellant's Motion for Rehearing:

**Brenda Herbert** refers to Brenda Herbert, Henry Bolton Estate and/or Ruby Bolton, as their agent, the Appellant;

**Contract** refers to those certain certified timesheets executed under penalty of criminal prosecution by the Parties showing the exact hours Laura Urbina agrees she worked and the check copy of payment by Brenda Herbert at the agreed $10/hour for those hours worked each week.

**Parties** refers to Appellant, Brenda Herbert, Henry Bolton Estate and/or Ruby Bolton, and Appellee, Laura Urbina;

**RR** refers to the Reporter's Record;

**Ms. Urbina** refers to Laura Urbina, the Appellee;

**Tr.** refers to the clerk's record pages(s) where the source of the statement or proposition may be found;

**Trial Court** refers to the 80th District Court of Harris County, Texas

....................................................................................................................................

## STATEMENT OF THE CASE

The appellate court incorrectly asserts undisputed evidence exist that Laura Urbina performed more work than she certified in writing she worked. The appellate court incorrectly asserts Laura Urbina's certified time sheets she executed each week that were sworn to be the ONLY hours she worked did not cover all Laura Urbina's hours. The appellate court incorrectly applies parole evidence to an unambiguous contract by stating self-serving hand-written records made by Laura Urbina are somehow creditable evidence to clarify an already clear contract. The appellate court should reconsider *en banc* the decision made in its opinion for the instant case.

Laura Urbina alleged Brenda Herbert stipulated that the contract wage was $10.00 per hour plus room and board. (CR p. 2 ¶ 6; RR 2, p. 41, lns. 1-2). Written contracts exist that Laura Urbina signed weekly wherein she certified under penalty of criminal prosecution ALL the specific hours she worked (RR4A, pp. 1-54---Exhibit D-3A certifications signed each week by Laura Urbina that memorialize Laura Urbin's contract ("Contract") with Appellant; and, a payment by check for those exact hours was tendered to Laura Urbina each week by the Appellant that Laura Urbina endorsed showing tender of her wages. (RR4, pp. 1-

1

32---Exhibit D-1 checks for each weeks' work endorsed by Laura Urbina; RR3, p. 5, lns. 3-11). It is ludicrous to bend the facts to suggest Laura Urbina signed a blank form under the penalty of law prior to it being completed for the exact payment she agreed to be paid. The payment supports the contract she signed. Laura Urbina did not quit because she was over-worked or disputed her wage. She was fired because she was no longer needed in that position as were the other workers who cared for Mr. Bolton who actually did the household duties (and were not given the benefit of free room and board) were also dismissed.

Contrary to this court's opinion on December 11, 2014 on page six (6), Laura Urbina DID NOT perform housekeeping duties in addition to the hours of work she certified she worked. Laura Urbina's certified her work "flow sheets" as the court refers to them under penalty of law showing ALL the work Laura Urbina claimed to do. The dispute at trial centered on how Laura Urbina could legally or ethically claim she worked more to blackmail her residential employers when she certified she worked specific and exact hours in writing and received payment for those exact hours AND NO MORE. Not only were Laura Urbina's handwritten records self-serving and compiled all at once in an attempt to somehow justify more work for more money BUT these records were parole evidence that she was prevented from using since her contracts were not ambiguous as to the hours and rate of pay and signed every week at and near the time she was paid. Laura Urbina

2

was angry she was no longer going to have a cush job when the decision was made to put Mr. Bolton in a nursing home so she sued the Appellants to squeeze more money out of them she was not due.

This court should reverse and render Laura Urbina take nothing.

ISSUES PRESENTED

I.  WHETHER THE APPELLATE COURT ERRED IN FINDING LEGAL SUFFICIENCY WHEN AS A MATTER OF LAW THE APPELLEE CERTIFIED IN WRITING AND RECEIVED PAYMENT FOR ONLY THE EXACT HOURS SHE ACCERTED UNDER PENALTY OF LAW SHE WORKED AND NO MORE

   A.  An Unambiguous Contract Existed between the Parties wherein Laura Urbina Stipulated her Wage was $10/Hour, She Certified in Writing under Penalty of Criminal Prosecution the Exact Hours She Worked, and She Accepted Payment for Specific Hours She Certified She Worked.  The Jury's Decision is improper as a Matter of Law

   B.  A Question of Fact Should Not Have Been Submitted to the Jury When the Issue was a Matter of Law

II. WHETHER THE APPELLATE COURT ERRED IN FINDING FACTUAL INSUFFICIENCY BASED ON THE ABSENCE OF A POST-TRIAL MOTION ASSERTING SAME WHEN A POST-TRIAL MOTION

3

ASSERTING FACTUAL INSUFFICIENCY WAS IN DEED FILED

# **STATEMENT OF FACTS**

## I. **Summary of the Facts**

The appellate court erred when its analysis of the evidence. It asserts Laura Urbina worked more hours than she certified under oath she worked. The evidence admitted showed the Plaintiff swore in writing at or near the time of the work to the exact and ONLY hours she worked beginning in April 2010, was paid properly by Defendants and accepted payments weekly from the Defendants beginning in without complaint or claim until she was terminated in August 2011. (RR3, p. 5, lns. 3-11; RR4, pp. 1-32, Ex. D-1 endorsed checks; RR4A, pp. 1-54, Ex. D-3A certified statement by Laura Urbina of the exact hours she worked). These Exhibits D-3A admitted at trial are executed and sworn certifications by Plaintiff of every hour she worked and the pay received; thus, evidencing the only hours she worked and compliance with the parties' agreement of $10/hour plus free room/board.

## II. **Procedural Facts**

From on or about April 2010 through August 2011, Laura Urbina worked with other caregivers certain shifts in the Appellants' home as a domestic caregiver for Henry Bolton. (CR p. 4). As a perquisite, Ms. Urbina was also given free

4

room and board. *Id.* Timesheets for each and every hour she worked were certified by Laura Urbina and she was paid the stipulated $10/hour as her compensation. (RR3, p. 5, lns. 3-11; RR4, pp. 1-32, Ex. D-1 endorsed checks; RR4A, pp. 1-54, Ex. D-3A certified statement by Laura Urbina of the exact hours she worked). Appellants no longer needed Ms. Urbina's services after August 2011, so Mr. Urbina was let go.

On May 10, 2012, Laura Urbina sued Brenda Herbert for not paying her for all the hours she alleged she worked (CR p. 4) despite Ms. Urbina having already agreed to the exact and ONLY hours she worked in writing (RR3, p. 5, lns. 3-11; RR4, pp. 1-32, Ex. D-1 endorsed checks; RR4A, pp. 1-54, Ex. D-3A certified statement by Laura Urbina of the exact hours she worked).

On October 29, 2013, the court incorrectly submitted the case to the jury (CR p. 22) despite the only issue the survived the case as a matter of law required the court to assess and order by virtue of the Parties' unambiguous contract. The jury returned a verdict for Laura Urbina finding Ms. Urbina had worked more hours than she swore in writing in the Contract that she had ONLY worked. (CR p. 29).

On November 15, 2013, this court signed the Judgment for Plaintiff on Jury Verdict. (CR p. 30).

On November 25, 2013, Appellant moved for a Judgment Notwithstanding

the Verdict. (CR p. 32). Appellant alleged therein the facts were insufficient to support the verdict.

On December 9, 2013, the Court denied the Defendants' Motion for Judgment Notwithstanding the Verdict (CR p. 99) even though a motion for judgment notwithstanding the verdict should be granted if the evidence is conclusive, and one party is entitled to recover as a matter of law. As a matter of law, Plaintiff swore to the hours she worked, swore she received agreed compensation for those hours and the written documents support no breach of contract occurred as a matter of law.

Brenda Herbert appeals the Trial Court's Order. (CR p. 105).

## SUMMARY OF ARGUMENT

The trial court erred as a matter of law when found that Laura Urbina had worked more hours than she previously certified IN WRITING under penalty of criminal prosecution that she worked when it awarded Ms. Urbina $11,000.00 in additional compensation for the additional hours she claimed to have worked. (CR p. 29). The appellate court fails to recognize that it is undisputed that Laura Urbina certified under penalty of law that the ONLY hours she worked she acknowledged, swore to those being the ONLY hours she worked and ALL of her duties were covered. Further that Laura Urbina's self-serving hand-written records were parole evidence that could not legally be considered under any circumstance since the

6

"flow sheet" contracts were unquestionably NOT ambiguous; thus, outside evidence she later fabricated had no bearing on her sworn contract.

Laura Urbina agreed in writing to work under the terms and conditions for which she was paid. (RR3, p. 5, lns. 3-11; RR4, pp. 1-32, Ex. D-1 endorsed checks; RR4A, pp. 1-54, Ex. D-3A certified statement by Laura Urbina of the exact hours she worked). This for the full sixteen (16) months Laura Urbina worked for Appellant. *After* she was terminated, she later alleged she was owed more money. (CR p. 4). Extortion. Ms. Urbina was paid for the hours she agreed to work at the rate offered and accepted as evidenced by her certified timesheets from April 2010 through August 2011. (RR3, p. 5, lns. 3-11; RR4, pp. 1-32, Ex. D-1 endorsed checks; RR4A, pp. 1-54, Ex. D-3A certified statement by Laura Urbina of the exact hours she worked).

The jury arbitrarily, without using the evidence as a basis, awarded additional compensation to Plaintiff/contract worker Laura Urbina from Appellant's non-commercial residence from Defendants/employer Appellant despite evidence Plaintiff/contract worker Laura Urbina swore in detailed documents at and near the time of the work to the exact number of hours she worked, she was paid in accordance with her agreement and accepted such payment. (RR3, p. 5, lns. 3-11; RR4, pp. 1-32, Ex. D-1 endorsed checks; RR4A, pp. 1-54, Ex. D-3A certified statement by Laura Urbina of the exact hours she

7

worked). The jury's decision is, as a matter of law, improper when it not supported by facts and/or the claim not submitted properly *Frost Nat'l Bank v. L& F Distribs., Ltd.,* 165 S.W.3d 310, 312 (Tex. 2005) (per curiam); *Coker v. Coker,* 650 S.W.2d 391, 393 (Tex. 1983); and, effectively holds that an employee who resides with an employer and swears in writing to specific hours of work, with a specific wage that they acknowledge receipt of, while enjoying the perquisites of free room, board and transportation can extort their former employer later after termination for more money.

The Contract is clear. It is undisputed that Laura Urbina swore to the exact and ONLY hours she worked and was paid for those very hours for sixteen months until she was dismissed because her employers no longer required any of the in-house help when Mr. Bolton was placed in a nursing facility. A written contract exist; *i.e.,* offer, acceptance, meeting of the minds for 16 months, a written communication that each party has consented to the terms of the agreement, a writing and consideration. *Angelou v. African Overseas Union*, 33 S.W.3d 269, 278 (Tex.App.-Houston [14th Dist.] 2000, no pet.). No parole evidence is admissible in the absence of ambiguity. No jury question of fact is necessary. Laura Urbina agreed to her wage, the hours she worked, accepted payment as well as free room and board and perquisites of basically light baby-sitting. She was upset she was fired, and with the aid of her attorneys, chose to extort Appellant as

8

may be the way she operated in her home country of Nicaragua. (RR2, p. 26, lns. 2-4).

## ARGUMENT AND AUTHORITIES

I. **WHETHER THE APPELLATE COURT ERRED IN FINDING LEGAL SUFFICIENCY WHEN AS A MATTER OF LAW THE APPELLEE CERTIFIED IN WRITING AND RECEIVED PAYMENT FOR ONLY THE EXACT HOURS SHE ACCERTED UNDER PENALTY OF LAW SHE WORKED AND NO MORE.**

A. **An Unambiguous Contract Existed between the Parties wherein Laura Urbina Stipulated her Wage was $10/Hour, She Certified in Writing under Penalty of Criminal Prosecution the Exact Hours She Worked, and She Accepted Payment for Specific Hours She Certified She Worked. The Jury's Decision is Improper as a Matter of Law.**

In Texas, the elements that are generally required to create an enforceable contract: (1) An offer; (2) Acceptance in strict compliance with terms of the offer; (3) A meeting of the minds with respect to both the subject matter of the agreement and all of its essential terms; (4) A communication that each party has consented to the terms of the agreement; (5) For a written contract, execution and delivery of the contract with an intent that it become mutual and binding on both parties; and, (6) Consideration. *Angelou v. African Overseas Union*, 33 S.W.3d 269, 278 (Tex.App.-Houston [14th Dist.] 2000, no pet.).

To constitute a valid contract, the minds of the parties must meet with respect to the subject matter of the agreement, and as to all of its essential terms;

9

and all of them must agree to the same thing in the same sense at the same time. *Solis v. Evins,* 951 S.W.2d 44, 49 (Tex.App.--Corpus Christi 1997, no writ). Their consent or agreement must comprehend the whole proposition, and the agreement must comprise all the terms which they intend to introduce into it. *Id.* There is no contract where material terms are left for future adjustment, or are not agreed upon. *Id.*

Here, the elements of an enforceable contract are met. Brenda Herbert offered Laura Urbina contract work for $10/hour. (CR p. 4). Ms. Urbina stipulated in her testimony and pleadings that she agreed to compensation of $10/hour. *Id.* Mr. Urbina accepted this offer as evidenced by her working approximately sixteen (16) months under the strict compliance of the terms offered. (CR p. 4). A meeting of the minds as to the essential terms existed until Mr. Bolton's health declined further and he needed to be put in a nursing home so Mr. Urbina's care was no longer needed. Ms. Urbina communicated she consented to the terms by certifying each week the exact hours she worked, the amount she was paid and she continued her employment until Brenda Herbert terminated her. (RR3, p. 5, lns. 3-11; RR4, pp. 1-32, Ex. D-1 endorsed checks; RR4A, pp. 1-54, Ex. D-3A certified statement by Laura Urbina of the exact hours she worked). A written contract memorialized the agreement each and every week. *Id.* Ms. Urbina received the exact consideration set out in the contract each week. *Id.* Thus, a written and

unambiguous contract existed. *Angelou v. African Overseas Union,* 33 S.W.3d 269, 278 (Tex.App.-Houston [14th Dist.] 2000, no pet.); *Solis v. Evins,* 951 S.W.2d 44, 49 (Tex.App.--Corpus Christi 1997, no writ).

It is well settled law that if a written contract has a definite meaning, then a court should read the text and construe it as a matter of law without the help from a jury. *Frost Nat'l Bank v. L& F Distribs., Ltd.,* 165 S.W.3d 310, 312 (Tex. 2005) (per curiam); *Coker v. Coker,* 650 S.W.2d 391, 393 (Tex. 1983). When the words on the page suffice, a court should not look outside the document to decide what the parties agreed. *J.M. Davidson, Inc. v. Webster,* 128 S.W. 3d 223, 229 (Tex. 2003). The overriding objective is to "ascertain and give effect to the parties' intentions as expressed in the document." *Frost Bank,* 165 S.W.3d at 311-12.

Here, the Parties' Contract (RR3, p. 5, lns. 3-11; RR4, pp. 1-32, Ex. D-1 endorsed checks; RR4A, pp. 1-54, Ex. D-3A certified statement by Laura Urbina of the exact hours she worked) has definite meaning that the trial court should has construed as a matter of law in the absence of ambiguity. *Frost Nat'l Bank v. L& F Distribs., Ltd.,* 165 S.W.3d 310, 312 (Tex. 2005) (per curiam); *Coker v. Coker,* 650 S.W.2d 391, 393 (Tex. 1983). The trial court did not; rather, it submitted a jury question of fact when as a matter of law the court should have granted judgment in favor of Defendants.

The appellate court sites *City of Keller v. Wilson,* 168 S.W.3d 802, 822, 827

(Tex. 2005) as its basis for finding legal sufficient in the facts in the instant case. However, *City of Keller v. Wilson* was reversed and remanded so is not good law. In *Keller,* the owners contended the city approved revised plans that it knew were certain to have the effect of flooding their land. The question was whether the court of appeals applied the correct standard in its legal sufficiency review by considering only the evidence and inferences that supported the finding. The appellate court held that both the inclusive and exclusive standards for the scope of legal-sufficiency review, properly applied, must arrive at the same result, disregarding evidence contrary to the verdict unless reasonable jurors could not. **The appellate court reversed this *Keller* case and judgment,** holding that the court of appeals did not properly apply the scope of review in that the critical question was the city's state of mind because the owners had to prove the city knew that flooding was substantially certain, and the court of appeals disregarded the evidence regarding why the city approved the plan. It was uncontroverted that three sets of engineers certified that the revised plans met the city's codes and regulations, and thus would not increase downstream flooding. *Id.*

In the instant case, court of appeals did not properly apply the scope of review in that the critical question is whether Laura Urbina was paid for the hours she worked when an unambiguous contract that SHE executed under penalty of law is the only evidence the trial court and jury could consider as she

acknowledged it covered ALL the work that she did and she acknowledged she received payment for that exact work. Moreover, the court may grant a motion for judgment notwithstanding the verdict if a directed verdict would have been proper. Tex. R. Civ. P. 301; *Fort Bend Cty. Drainage Dist. V. Sbrusch,* 818 S.W.2d 392, 394 (Tex. 1991). A motion for judgment notwithstanding the verdict should be granted if the evidence is conclusive, and one party is entitled to recover as a matter of law. *John Masek Corp. v. Davis,* 848 S.W.2d 170, 173 (Tex. App.—Houston [1st Dist.] 1992, writ denied).

Moreover, even if the rule in the *reversed Keller* case was applied, the "no evidence" points should be sustained because the record discloses (a) a complete absence of evidence of Laura Urbina worked more hours than she swore and certified under oath that she worked AND the evidence establishes conclusively the opposite of Laura Urbina's contention, being she worked more hours than she swore under oath she worked and received payment for. *Id.*

As a matter of law, Laura Urbina swore to the hours she worked, swore she received agreed compensation for those hours and the written documents support no breach of contract occurred as a matter of law. This court should reverse the jury's verdict because the evidence is conclusive that Laura Urbina swore at or near the time of her work, the EXACT hours she worked, then accepted compensation for that work at the agreed upon $10/hour for her entire length of

13

employment, then ONLY complained AFTER she was terminated so she could extort more money out of her kind employer, Brenda Herbert. Brenda Herbert is entitled to a "take nothing" judgment as to Laura Urbina as a matter of law. *John Masek Corp. v. Davis,* 848 S.W.2d 170, 173 (Tex. App.—Houston [1st Dist.] 1992, writ denied). The Trial Court's ruling was improper and should be reversed. The appellate court's ruling uses bad law and is also improper so should be reconsidered.

**B.      A Question of Fact Should Not Have Been Submitted to the Jury When the Issue was a Matter of Law.**

It is well settled law that if a written contract has a definite meaning, then a court should read the text and construe it as a matter of law without the help from a jury. *Frost Nat'l Bank v. L& F Distribs., Ltd.,* 165 S.W.3d 310, 312 (Tex. 2005) (per curiam); *Coker v. Coker,* 650 S.W.2d 391, 393 (Tex. 1983). When the words on the page suffice, a court should not look outside the document to decide what the parties agreed. *J.M. Davidson, Inc. v. Webster,* 128 S.W. 3d 223, 229 (Tex. 2003). The overriding objective is to "ascertain and give effect to the parties' intentions as expressed in the document." *Frost Bank,* 165 S.W.3d at 311-12.

However, if a contract is ambiguous, the court should accept parol evidence and can empanel a jury to decide, as an issue of fact, the "true intent of the parties." *Coker, 650 S.W.2d at 394-95*. A contract is ambiguous if it is open to more than one reasonable reading. *Frost Bank, 165 S.W.3d at 312*. Deciding whether a

14

contract is ambiguous is itself an issue of law for the court. *Webster, 128 S.W.3d at 229*.

To determine whether a contract is ambiguous, courts apply standard rules of interpretation. *Frost Bank, 165 S.W.3d at 312*. These rules require an attempt to harmonize the contract as a whole. *Id*. An ideal harmonization will not treat any clause as a nullity, and courts generally presume that every provision was intended to have some effect. *Heritage Res., Inc. v. NationsBank, 939 S.W.2d 118, 121 (Tex. 1996)*. Words should be given their ordinary meaning unless it appears from context that they were used in a technical or different sense. *Id*. Courts should interpret contracts from a utilitarian perspective, keeping in mind the parties' business objectives. *Frost Bank, 165 S.W.3d at 312*. Absurd, inequitable, or oppressive interpretations are to be eschewed unless they prove unavoidable. *Id*.

In *Michelin North America, Inc. v. First Industrial NLF 12 JV, LLC,* a jury returned a verdict in favor of the Michelin after construing the contract as a matter of fact when as a matter of law the contract was unambiguous, so the Judge granted a judgment notwithstanding the verdict because the jury's findings were immaterial to the resolution of the controversy before the court. 2014 Tex. App. LEXIS 1681 (Tex. App.—Houston [1st Dist.] Feb. 13, 2014); *Spencer v. Eagle Star Ins. Co. of Am.,* 876 S.W.2d 154, 157 (Tex. 1994).

Laura Urbina admits she agreed to $10/hour, she agrees to the terms,

15

conditions and hours she worked by her own certification at and near the time she completed the work. (RR3, p. 5, lns. 3-11; RR4, pp. 1-32, Ex. D-1 endorsed checks; RR4A, pp. 1-54, Ex. D-3A certified statement by Laura Urbina of the exact hours she worked). She did not sign a "blank" form as she testified because the checks were made out by Ruby Bolton on the same day BUT after the certifications were signed by Laura Urbina showing she agreed to the hours she had worked. (RR3, pp. 70-71, lns. 1-13 & 1-25). Laura Urbina accepted payment for the exact hours she worked in accordance with her contract at and near the time of completion of the work. (RR3, p. 5, lns. 3-11; RR4, pp. 1-32, Ex. D-1 endorsed checks; RR4A, pp. 1-54, Ex. D-3A certified statement by Laura Urbina of the exact hours she worked). She only alleged she was not paid properly AFTER she was terminated as extortion for more money despite having signed weekly timesheets under penalty of criminal prosecution if they were not accurate.

Thus, the Contract was unambiguous so it must be construed as a matter of law without the help of the jury. *Frost Nat'l Bank v. L& F Distribs., Ltd.,* 165 S.W.3d 310, 312 (Tex. 2005) (per curiam); *Coker v. Coker,* 650 S.W.2d 391, 393 (Tex. 1983). The words on the page are clear as to the number of hours worked, the wage and acceptance, so the Court does not need to look outside of the document to decide what the parties agreed. *J.M. Davidson, Inc. v. Webster,* 128 S.W. 3d 223, 229 (Tex. 2003). Thus, the jury's findings were immaterial to the

16

resolution of the controversy before the court. 2014 Tex. App. LEXIS 1681 (Tex. App.—Houston [1st Dist.] Feb. 13, 2014); *Spencer v. Eagle Star Ins. Co. of Am.,* 876 S.W.2d 154, 157 (Tex. 1994). So, as a matter of law, the judgment should be reversed and rendered so that the Plaintiff, Laura Urbina take nothing.

**II. WHETHER THE APPELLATE COURT ERRED IN FINDING FACTUAL INSUFFICIENCY BASED ON THE ABSENCE OF A POST-TRIAL MOTION ASSERTING SAME WHEN A POST-TRIAL MOTION ASSERTING FACTUAL INSUFFICIENCY WAS IN DEED FILED.**

The appellate asserts in one paragraph in its opinion that since the Appellants failed to present a motion for new trial challenging factual sufficiency they waived their complaint. This argument, however, fails because the Appellants DID challenge the factual sufficiency by virtue of their Motion for Judgment Notwithstanding the Verdict, that the court heard and ruled on.

"In order to preserve a complaint for appellate review, a party must have presented to the trial court a timely request, objection or motion, stating the specific grounds for the ruling he desired the court to make if the specific grounds were not apparent from the context. It is also necessary for the complaining party to obtain a ruling upon the party's request, objection or motion." *Cecil v. Smith,* 804 S.W. 2d 509, 511 (Tex. 1991).

This trial court submitted a question a fact improperly to the jury since a

directed verdict was proper. (CR p. 22). So, Brenda Herbert moved for a judgment notwithstanding the verdict. (CR p. 32); Tex. R. Civ. P. 301; *Fort Bend Cty. Drainage Dist. V. Sbrusch,* 818 S.W.2d 392, 394 (Tex. 1991). A motion for judgment notwithstanding the verdict should have been granted since the evidence was conclusive, and Brenda Herbert was entitled to a Defendant "take nothing" judgment as a matter of law. *John Masek Corp. v. Davis,* 848 S.W.2d 170, 173 (Tex. App.—Houston [1st Dist.] 1992, writ denied).

Laura Urbina was required to prove (1) the existence of a valid contract, (2) that Laura Urbina performed or tendered performance, (3) that Appellant breached the contract, and (4) that Laura Urbina was damaged as a result of the breach. *See Critchfield v. Smith,* 151 S.W.3d 225, 233 (Tex. App. Tyler 2004).

Laura Urbina cannot prove Appellant breached the contract the only contract that exists is in writing and she admits in her own writing week after week in front of witnesses and accepting the money associated with such work as the actual hours she worked. Laura Urbina testified that she had an oral agreement with Appellant to work for $10/hour plus room and board and she worked, effectively, every waking hour. She did not want to quit because she liked the job and could not find any other job for $10/hour. She signed certified statements on and near the time of her work showing the hours she

worked, then accepted, endorsed and cashed the checks given to her as payment based on those certified hours. Laura Urbina did not meet her burden of proof that Appellant breached any contract.

In reviewing factual insufficiency issues challenging a jury verdict, if the evidence in support of a finding is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust, there is no evidence to support such a finding, and it must be reversed. *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986) (per curiam).

Laura Urbina cannot and did not prove she worked more than the hours she was paid for. She cannot prove the Appellant breached any contract. To the contrary, she signed certified statements at and near the time of the work that she only worked eight (8) hours. (RR3, p. 5, lns. 3-11; RR4, pp. 1-32, Ex. D-1 endorsed checks; RR4A, pp. 1-54, Ex. D-3A certified statement by Laura Urbina of the exact hours she worked). She brought no witnesses to support she worked more than the eight (8) hours per day she was paid for. She fabricated a document that she clearly wrote all on the same day (RR4, pp. 2-8) as her only evidence that she worked more hours than she was paid. She watched TV and would not leave because she had free room and board. She lied about not receiving Christmas money when it was clear at least by one check that Appellant gave her a $100 for Christmas in the check memo. There

19

were as many as three (3) other persons and his wife and daughter in the Appellant's home to help with one aged man, Henry Bolton, who was akin to a quiet baby with several nannies to brush his hair, feed him and help bath him at any given time. When Ruby Bolton hurt herself and could no longer pitch in, Appellant decided they needed a person who could drive. Laura Urbina was fired. She was not happy losing her cush job and decided to extort Appellant.

Laura Urbina was lying. Bald face lying on the stand. She said she did not "remember" that she received compensation from the Defendants (RR3, p. 5, lns. 6-11) at all? She testified that the Defendants brought suit against her; that she was sued? (RR3, pp. 28-29, lns. 24-25 & 1-25). Defendants had no reason to sue her. This is ludicrous and not even well thought out lies. She fabricated her "hours" using an exhibit she created all at once using the same pen with the same pressure, not writing down each day her hours individually. (RR3, pp. 57-58, lns. 14-25 & 1-25). Ms. Urbina liked working for the Defendants because it was a cush job (RR3, p. 12, lns. 1-5). The evidence in support of a finding the Laura Urbina worked more hours than she certified in writing under criminal penalty is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust, there is no evidence to support such a finding that she is entitled to additional compensation, and it be reversed.

## CONCLUSION

**WHEREFORE, PREMISES CONSIDERED**, Appellant, Brenda Herbert, Henry Bolton Estate and Ruby Bolton, prays that this Court reverse the trial court's decision and for such other and further relief, both general and special, legal and equitable, to which the Brenda Herbert, Henry Bolton Estate and/or Ruby Bolton might show themselves justly entitled.

Respectfully submitted,

By:   /s Toni Sharretts
TONI L. SHARRETTS
TSBN:  24037476
11054 North Hidden Oaks
Conroe, Texas  77384
(281) 827-7749 - Telephone
*iceattorney@aol.com*
ATTORNEY FOR APPELLANT

## CERTIFICATE OF COMPLIANCE

I hereby certify that this document contains 5,827 words.

/s Toni Sharretts
Toni L. Sharretts

## CERTIFICATE OF SERVICE

I hereby certify that on this the 29th day of December, 2014, a true and correct copy of the foregoing instrument has been forwarded via e-file to all counsel of record, as follows:

Juan Manuel Gonzalez          *Via E-file: juanmgmo@gmail.com*

8918 Tesoro Drive
San Antonio, TX  78217
(210) 587-4000 - telephone

<u>/s Toni Sharretts</u>
Toni L. Sharretts